GENEVIEVE KEHM, Appellee, v. B. N. DILTS, Appellant.

No. 43481.

DECEMBER 15, 1936.

Senneff, Bliss & Senneff, for appellant.

Breese & Cornwell, for appellee.

KINTZINGER, J.—Between seven and eight o'clock on the evening of July 9, 1935, while riding as a passenger in the rear seat of an automobile driven by Milo Smith, in an easterly direction on a dirt road, a few miles southwest of Nora Springs, Iowa, plaintiff was injured as a result of being thrown against the top of the car, driven over a culvert and hump thereon extending across the entire roadway. The culvert was installed by the defendant under a contract with the county, about two days prior to the injury.

Plaintiff alleges that defendant was guilty of negligence in the following respects:

1. In placing a twenty-four inch culvert pipe, covered with a dirt fill across the highway, leaving a bump or ridge across the road at a substantially higher level than the surrounding surface of the road; and

2. In not placing a barricade or warning in the road to warn travelers of the existence of said hump.

At the conclusion of the evidence, defendant's motion for a directed verdict was overruled, and the case was submitted to the jury, which returned a verdict in favor of plaintiff, on which judgment was entered. A motion for new trial and exceptions to instructions were also overruled. Defendant appeals.

The testimony shows that in placing the culvert across the roadway, the defendant excavated a trench across the road about 32 to 34 inches deep. The pipe was put into this trench, and the earth excavated therefrom was thrown over the culvert, leaving a hump or bump across the roadway. There is a dispute in the testimony as to the height and size of the bump after the work was completed. The testimony on the part of plaintiff tends to show that the hump was about two feet wide at the bottom, and one foot to 18 inches higher than the level of the roadway at the top; that of the defendant tends to show that the earth covering the culvert was spread out so that the width at the bottom of the hump on the road was about eight feet, and the height from 5 to 8 inches higher than the level of the road. The culvert was constructed on the 7th or 8th of July, 1935, by and with the knowledge of the defendant.

The witnesses for plaintiff testify that the entire roadway traveled by them on this highway west of the culvert was level and smooth, and that none of the occupants of the car saw any similar hump or any construction outfit on the roadway before reaching the place of accident.

The car in which plaintiff was riding was traveling at the moderate speed of about 25 miles an hour, and the evidence tends to show that neither the driver nor any of the other occupants of the car observed the bump until they came to a point within 20 or 25 feet therefrom. They said *when they first saw the bump,* it did not appear as large as it was. Upon seeing the bump, the driver slowed down his car so that when it passed over the bump, it was traveling between five and seven miles an hour. There was no perceptible bounce of the car when the front wheels passed over the bump, but when the rear wheels passed over, there was a severe jolt, throwing the plaintiff against the top of the car, bruising her head, neck and shoulders, inflicting a 4½ inch cut in her scalp. She was taken to a doctor, had several stitches sewed in her scalp, and was then taken home, where she was confined to her bed for several days. Plaintiff's testimony shows that she suffered severe pains in her head, and that it took several weeks for the scalp wound to heal; and that she continued to suffer pains in her head at frequent periods, which continued about twice a week until the time of the trial.

Mr. Smith and Mr. Kehm and the plaintiff's five-year-old daughter were in the front seat, and the plaintiff, Mrs. Smith, and plaintiff's baby occupied the rear seat, with the Smiths' little girl standing up behind the front seat. The evidence shows that it was still daylight and the sun was about to set when the accident occurred.

I. Appellant contends that the court erred in overruling its motion for a directed verdict because the evidence fails to establish any negligence on the part of the defendant in the construction of the culvert. The culvert in question was constructed by the defendant under a contract with the county.

The undisputed evidence shows there was some rise in the roadway where the culvert was constructed. It is conceded by the defendant that the top of the bump was from 5 to 7 inches above the level of the roadway. Defendant contends, however, that the dirt was thrown over the culvert in such a manner as to leave it about 8 feet wide at the bottom with a gradual approach

to the top of the bump, in such manner that the roadway was left in a reasonably safe condition for public travel. Plaintiff's testimony tends to show that the bump was about two or three feet wide at the bottom, and about one foot to eighteen inches above the level of the roadway at the top. The question, therefore, is purely one of fact as to the condition of the roadway at the culvert, and the question of defendant's negligence was, therefore, properly submitted to the jury.

 Under the rule in this state the defendant in constructing the culvert was required to leave the roadway at that point in a reasonably safe condition for public travel thereon. His liability accrues not because of a breach of contract, but for his tort in making the highway dangerous and in failing to guard it. Defendant in this case was an independent contractor and as such is liable for his own negligence. Elzig v. Bales, 135 Iowa 208, 112 N. W. 540; Law v. Bryant Asphaltic Pav. Co., 175 Iowa 747, 157 N. W. 175, 7 A. L. R. 1189; Wolford v. City of Grinnell, 179 Iowa 689, 161 N. W. 686; Grennell v. Cass County, 193 Iowa 697, 187 N. W. 504; Spiker v. Ottumwa, 193 Iowa 844, 186 N. W. 465; Schwind v. Gibson, 220 Iowa 377, 260 N. W. 853; Wood v. Ind. School Dist., 44 Iowa 27; Fitzgibbon v. Dredging Co., 141 Iowa 328, 117 N. W. 878; Solberg v. Schlosser, 20 N. D. 307, 127 N. W. 91, 30 L. R. A. (N. S.) 1111; Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, 86 A. L. R. 198.

In Grennell v. Cass County, 193 Iowa 697, loc. cit. 705, 187 N. W. 504, 507, this court said:

"If the appellee be liable, it is not simply because of a breach of contract, but for its tort in making a highway dangerous, and failing to properly guard it. * * * The appellee contractor in this case was not a public officer or agency, nor engaged in performing governmental functions. It was an independent contractor, which had undertaken to construct the bridge with its own labor and materials. Its legal responsibilities, so far as third persons are concerned, were neither greater nor less than are assumed by every contractor who undertakes to produce a given result * * *. The employees engaged in the work are its own, and it alone is responsible for the damages, if by its negligence some third person is injured."

Solberg v. Schlosser, 20 N. D. 307, 127 N. W. 91, 30 A. L. R. (N. S.) 1111, is almost identical with the case at bar, and re-

lated to the liability of a contractor in failing to level down the dirt on the roadway in such a manner to make it reasonably safe for travel.

Of similar import is Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, loc. cit. 374, 86 A. L. R. 198, where the court said:

"The evidence sustains a finding that the defendants were negligent in leaving the hump or ridge as it was and that their negligence caused the injury to the plaintiff."

The evidence of plaintiff tends to show that the culvert across the road was about two or three feet wide at the bottom, and about a foot to eighteen inches higher than the level of the road.

We cannot say, as a matter of law, that an obstruction of this kind extending across a traveled roadway does not constitute negligence. Whether or not the hump in the roadway constituted negligence was peculiarly one for the jury.

It is undisputed that no barricade or warning of any kind was placed at or near the bump in question. If the hump in the roadway caused by the construction of the culvert was dangerous for travelers, then it was also a question for the jury to say whether or not the defendant was negligent in failing to place a barricade or construction warning at or near the hump in question.

We find no error in submitting the question of negligence to the jury.

II. Appellant also contends that the court erred in not sustaining the motion for a directed verdict because the proximate cause of plaintiff's injuries was the action of the driver of the car in which plaintiff was riding, and that defendant is, therefore, not liable for plaintiff's injuries.

Defendant contends that, because the county engineer and one or two employees of the defendant testified that the culvert could be seen for a distance of 800 feet to the west, that it was the driver's duty to stop his car and in some manner drive around the bump in order to avoid injury. It does not appear from the testimony of these witnesses, however, that the bump could be seen from that distance between 7:30 and 8 o'clock in the evening, as the sun was setting. The driver of the car and plaintiff's husband, who were in the front seat, both testified

that the bump was not visible to them at the time they were approaching it until they came within 20 or 25 feet thereof, and that at that time it did not appear to be as high as it was.

Plaintiff's husband testified:

"Q. What was your judgment at that time as to about how high it was? A. Well at that distance it didn't look like it amounted to very much. * * * As I looked at it again I see it was going to be a little more of a bump. * * * When I first observed it, it didn't look like it amounted to anything. It just looked like they had done some work on the road but it didn't appear to be a bump, but when I called back to the ladies in the back seat it appeared to be a foot to eighteen inches high."

The driver of the car also gave similar testimony and in addition thereto said that he thought he could go over the bump in safety. The front wheels did get over safely, but the jolt to the car came when the rear wheels were passing over the bump.

There is a difference between seeing something in the roadway and realizing that danger was likely to result therefrom. Wolford v. City of Grinnell, 179 Iowa 689, 161 N. W. 686, 688. In that case, loc. cit. 695, this court said:

"And, while they were required to exercise ordinary care in looking for defects, it was for the jury to say whether, under all the circumstances, they exercised this care, and, if they did, whether or not they saw or should have seen the obstruction, and *knew of the danger likely to arise therefrom.*" (Italics ours.)

Where the evidence is conflicting or different inferences may reasonably be drawn therefrom, the question becomes one of fact for the jury. 29 Corpus Juris, 718.

It may also be said that where the evidence shows that an injury resulted from the negligence of two agencies, the question of proximate cause is peculiarly one for the jury. Wolfson v. Jewett Lbr. Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336; Kuhn v. Kjose, 216 Iowa 36, 248 N. W. 230; Schwind v. Gibson, 220 Iowa 377, 260 N. W. 853.

It is our conclusion from the evidence in this case that the question of whether or not the negligence of the defendant, if any, was the proximate cause of plaintiff's injuries was properly submitted to the jury.

■■■ III. Appellant also contends that the motion for a di-

rected verdict should have been sustained because plaintiff was guilty of contributory negligence as a matter of law. Plaintiff's husband was riding in the front seat with the driver; the plaintiff and Mrs. Smith and two children occupied the rear seat. Plaintiff was talking with Mrs. Smith prior to the accident. The highway in question was a dirt road, and for a distance of about a mile west of where the accident occurred, was in a smooth condition; and that the car was traveling about 25 miles an hour. From the testimony of the occupants of the car, there was nothing in the appearance of the roadway to indicate the existence of a dangerous bump ahead. Mr. Smith was a good driver, and plaintiff and her husband frequently rode with them before. It appears from the evidence that plaintiff was paying no particular attention to the roadway ahead. She had nothing to do with the driving or operation of the car, and, having full confidence in Mr. Smith's ability to drive the car, she placed complete reliance upon him in so doing.

It is true, there was some road machinery and a shack along the road about a half or three-fourths of a mile east of where the accident happened, but these facts were not observed by the plaintiff or any of the occupants of the car before the accident, as they had not reached this point in the road. If the plaintiff had seen what the driver saw, she would still not be negligent, as a matter of law, in being driven over the bump, and if the driver was guilty of negligence, his negligence is not imputable to plaintiff as a guest in his car. Bradley v. Interurban Ry. Co., 191 Iowa 1351, 183 N. W. 493; Johnson v. Des Moines City Railway, 201 Iowa 1044, 207 N. W. 984; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; Albert v. Maher Bros. Trans. Co., 215 Iowa 197, 243 N. W. 561; Schwind v. Gibson, 220 Iowa 377, 260 N. W. 853; Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, 86 A. L. R. 198.

In Bradley v. Interurban Ry. Co., 191 Iowa 1351, loc. cit. 1353, 183 N. W. 493, 494, this court said:

"With the first proposition, that the invited guest or passenger is not absolved from his obligation to use reasonable care for his own safety, there is no room for dispute; but this is as far as the court can keep step with counsel. The leap from the statement of duty of reasonable care for one's own safety to the conclusion, as a matter of law, that the invited guest is negligent

if he fails to see an impending danger in time to interfere and prevent it, is entirely too far. The question as to what is reasonable care in such an emergency is peculiarly a question for the jury. *Within reasonable limits, the invited passenger in an automobile may reasonably and lawfully rely on the skill and judgment of the driver.* (Italics ours.) He cannot physically interfere with the driver's control of the car, without peril of disaster. He may, under proper circumstances, sound an alarm, if he sees danger ahead, of which the driver seems oblivious; but even then he must still, to some extent, place his reliance upon the driver to avoid it.''

In Albert v. Maher Bros. Trans. Co., 215 Iowa 197, loc. cit. 202, 243 N. W. 561, 563, this court said:

''A directed verdict, appellant contends, should have been allowed by the district court * * *. The basis for this contention is that Mrs. Crimmons was paying no attention to the operation of appellee's car. She, it is said by appellant, had wholly abandoned her safety to the appellee. * * * What, then, could Mrs. Crimmons have done under the circumstances to have prevented the accident? Mrs. Crimmons' position in the back seat of the * * * sedan, on the dark night, was not such, the jury could find, as to enable her to keep an outlook or in any way warn or assist the driver in operating the vehicle. * * * Hence, under all the facts and circumstances in this case, it cannot be said as a matter of law that appellee's mother-in-law, Mrs. Crimmons, was guilty of contributory negligence.''

A somewhat similar question was presented in Schwind v. Gibson, 220 Iowa 377, loc. cit. 386, 260 N. W. 853, 858, where we said:

''It cannot be seriously urged that she was guilty of contributory negligence as a matter of law. There was evidence tending to show that the car was being driven at a speed of from thirty to thirty-five miles an hour on a paved highway. This was not such an excessive speed on a country highway that it required a protest from her. The decedent was seated in the rear seat with her baby on her lap. There was no communication between the occupants of the front seat and decedent * * *. Decedent knew nothing about the slippery condition of the pavement at the intersection. Most of the pavement was dry be-

tween Central City and the intersection * * *. Neither the driver nor Mr. Koppes knew anything about the slippery condition of this roadway at the intersection until after they saw the truck on the road ahead. * * * It is the settled rule of law in this state that whether or not an invited guest, in an automobile over which he has no control, is guilty of contributory negligence is peculiarly a question for the jury. Cram v. City of Des Moines, 185 Iowa 1292, 172 N. W. 23; Bradley v. Interurban Ry. Co., 191 Iowa 1351, 183 N. W. 493; Waring v. Dubuque Elec. Co., 192 Iowa 1240, 186 N. W. 42 [and many other cases cited]. There is evidence in this record tending to show that the driver of the car did everything that was humanly possible to avoid the collision after discovering the truck on the highway, * * *. The decedent could have done no more to avoid the collision. The question of whether or not her position in the car could have enabled her on this dark night to have assisted the driver * * * was clearly for the jury.''

In Hoffman v. City of St. Paul, 187 Minn. 320, 245 N. W. 373, loc. cit. 374, 86 A. L. R. 198, the court said:

''The court charged that there was no contributory negligence on the part of the plaintiff. She was a passenger. She sat in the back seat. She conducted herself as a passenger usually does. She knew nothing of the presence of the ridge or hump. She trusted in her daughter as a driver. There is nothing from which a lack of care on her part can be found.''

Plaintiff was seated in the rear seat with Mrs. Smith, who had plaintiff's baby on her lap. The car was being driven along a smooth dirt road at about sundown, with Mr. Smith, Mr. Kehm, and plaintiff's five-year-old daughter between them in the front seat, at the very moderate speed of about 25 miles an hour. There was nothing seen in the roadway ahead or in the speed or manner in which the car was driven to indicate there was any danger ahead. From the manner in which this car was being driven, and all circumstances shown, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence.

We find no error in the court's ruling on this question.

IV. Appellant also contends that plaintiff assumed all risk of injury because of the reliance placed by her upon the driver of the car.

For the reasons expressed in Division III hereof on the question of her contributory negligence, we are constrained to hold that this question was also one for the jury, and we find no error in the court's ruling thereon.

This conclusion is supported by Johnson v. Des Moines City Ry., 201 Iowa 1044, loc. cit. 1046, 207 N. W. 984, 986. In that case this court, speaking through Justice Evans, said:

"On the question of contributory negligence, the plaintiff testified that she neither saw nor heard the street car until the collision occurred; that she did nothing to avoid the accident, or to caution the driver; that, in effect, she trusted the driver implicitly. It is contended from this testimony that the plaintiff should either be deemed guilty of contributory negligence, or that she had so assumed the negligence of the driver that it should be imputed to her. The argument is too ingenious. She was not consciously approaching a danger point. She had no knowledge of or reason to apprehend danger. Nothing called upon her for a warning. She knew nothing about an automobile. She was occupying the back seat. The automobile was traveling at a very moderate speed. Appellant has not been able to suggest, in support of this contention, any particular thing which the plaintiff ought to have done at this juncture. We can think of nothing."

Likewise, in the case at bar, it cannot be said, as a matter of law, that plaintiff had assumed the risk of the driver's negligence, if any, or that she was guilty of contributory negligence, and we find no error on this point.

 V. Appellant also contends that the court erred in charging the jury by instruction No. 6, that the negligence of the driver of the car was not imputable to plaintiff, and that such negligence would not entitle defendant to a verdict, if the jury finds by the greater weight of the evidence that the defendant was negligent substantially as alleged, and that such negligence was the proximate cause of plaintiff's injuries.

This instruction, when considered in connection with instruction No. 5, placing the burden of proving freedom from contributory negligence upon plaintiff, is not erroneous. It simply tells the jury of the well-settled rule in this state that the negligence of the driver is not imputable to a passenger. Such is the well-settled rule in this state as expressed in the following

cases: McBride v. Des Moines City Railway, 134 Iowa 398, 109 N. W. 618; Withey v. Fowler Co., 164 Iowa 377, 145 N. W. 923; Lawrence v. Sioux City, 172 Iowa 320, 154 N. W. 494; Fisher v. Ellston, 174 Iowa 364, 156 N. W. 422; Bridenstine v. Iowa City Elec. Co., 181 Iowa 1124, 165 N. W. 435; Nels v. Rider, 185 Iowa 781, 171 N. W. 150; Borg v. Des Moines City R. Co., 190 Iowa 909, 181 N. W. 10; Waring v. Dubuque Elec. Co., 192 Iowa 1240, 186 N. W. 42.

It is our conclusion that there was no error in the giving of the instruction complained of.

VI. Appellant also contends that the court erred in giving the following part of instruction No. 6:

"The plaintiff had a right to travel upon the highway in question and cannot be charged with negligence for not taking some other road unless the defendant has proved by the greater weight or preponderance of the evidence that the plaintiff knew or from the condition of the said highway near the place where the injuries occurred ought to have known that it was dangerous to continue east upon said highway."

This instruction is inconsistent with the instruction on freedom from contributory negligence given in instruction No. 5. In that instruction the court said:

"In order for the plaintiff to recover anything in this action, the burden is upon her to prove by the preponderance or the greater weight of the evidence before you the following:

"1. * * *

"2. That the plaintiff was free from any negligence contributing to said accident or the injuries resulting therefrom.

"3. * * *

"4. * * *"

This instruction correctly states the rule with reference to the burden of proof on contributory negligence.

It is the well-settled rule of law in this state that the burden of proving freedom from contributory negligence is upon the plaintiff. This rule is so elementary that it needs no citation of authorities to support the same.

Instruction No. 6 is inconsistent with the foregoing instruction No. 5, in that it places the burden upon *the defendant* to prove "by the greater weight or preponderance of the evidence

that the plaintiff knew or from the condition of the said highway near the place where the injuries occurred ought to have known that it was dangerous to continue east upon said highway." Whereas, under instruction No. 5, the burden was correctly placed upon the plaintiff to prove by the greater weight or preponderance of the evidence that she was not guilty of any negligence contributing to the accident. By necessary implication this places the burden of proving freedom from contributory negligence upon plaintiff. It also places the burden upon plaintiff of proving that *she* did not know of the condition of the highway at or near the place where the injuries occurred, in order to relieve her from damages for the injuries sustained thereon.

Instruction No. 6 relieves the plaintiff from establishing her freedom from contributory negligence when it charges the jury that she "cannot be charged with negligence for not taking some other road unless the *defendant has proved by the greater weight or preponderance of the evidence that plaintiff knew* * * * from the condition of the highway * * * that it was dangerous to continue east" thereon.

As that part of instruction No. 6 complained of is inconsistent with the rule announced in instruction No. 5, and does not state that correct rule with reference to the burden of proof on contributory negligence, it necessarily follows that instruction No. 6 was prejudicial and erroneous.

For this reason, it necessarily follows that this case must be and is hereby reversed.—Reversed.

PARSONS, C. J., and all Justices concur.