# ELIZABETH F. HOFFMAN v. CITY OF ST. PAUL AND ANOTHER.[1]

November 18, 1932.

No. 29,056.

[1]Reported in 245 N. W. 373.

*Lewis L. Anderson, H. J. Flynn,* and *Edwin Murphy,* for appellant city of St. Paul.

*James D. Swan,* for appellant Ulderico Mariani.

*William H. Seward* and *T. D. Sheehan,* for respondent.

DIBELL, J.

Action to recover damages for personal injuries sustained by the plaintiff while a passenger in an automobile. There was a verdict for the plaintiff. The defendants appeal from an order denying their motion for a new trial.

On Sunday, April 27, 1930, the plaintiff and her daughter were on the way home from church in an automobile. Plaintiff was riding in the rear seat. Her daughter was driving. The auto belonged to the plaintiff's husband. He was not along.

On March 24, 1930, the defendant Mariani under a contract with the city dug a trench for sewer connections in St. Anthony avenue west of the curb line of Dale street. It extended from the center of St. Anthony avenue to the curb. It was two and one-half feet wide and 11 feet deep. The sewer connection was made, and the trench was filled. There was left a ridge or hump 16 feet long and

12 to 14 inches high, which sloped to the street level. The automobile hit it, and the plaintiff was injured. The evidence sustains a finding that the defendants were negligent in leaving the hump or ridge as it was and that their negligence caused the injury to the plaintiff. Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763; Bieber v. City of St. Paul, 87 Minn. 35, 91 N. W. 20; Kleopfert v. City of Minneapolis, 93 Minn. 118, 100 N. W. 669; Ogren v. City of Minneapolis, 121 Minn. 243, 141 N. W. 120; Fitzgerald v. Village of Bovey, 174 Minn. 450, 219 N. W. 774.

■ The court charged that there was no contributory negligence on the part of the plaintiff. She was a passenger. She sat in the back seat. She conducted herself as a passenger usually does. She knew nothing of the presence of the ridge or hump. She trusted in her daughter as a driver. There is nothing from which a lack of care on her part can be found. The question of the contributory negligence of a passenger was considered in Howe v. M. St. P. & S. S. M. Ry. Co. 62 Minn. 71, 64 N. W. 102, 30 L. R. A. 684, 54 A. S. R. 616, and the general doctrine announced. Sometimes the question is held one of fact for the jury, often one of law for the court, and infrequently it has been held that the passenger as a matter of law was negligent. See 4 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 7037-7038. The following hold, under the particular facts of the case, that as a matter of law the passenger was not contributorily negligent. Johnson v. St. Paul City Ry. Co. 67 Minn. 260, 69 N. W. 900, 36 L. R. A. 586; McDonald v. Mesaba Ry. Co. 137 Minn. 275, 163 N. W. 298; Fitzgerald v. Village of Bovey, 174 Minn. 450, 219 N. W. 774; Wicker v. North States Constr. Co. Inc. 183 Minn. 79, 235 N. W. 630; Engholm v. Northland Transp. Co. 184 Minn. 349, 238 N. W. 795; Burgess v. Crafts, 184 Minn. 384, 238 N. W. 798. The court's refusal to submit the question to the jury was correct.

■ The defendants claim error in the court's refusal to charge that there might be a verdict for either of the defendants. The city hired the contractor. It knew what he did. The contractor did the work under the immediate charge of the inspector of the

city. If one was negligent the other was. Either might have been sued alone. But both were sued together, and there was nothing justifying a charge that one might be found liable and the other not liable.

■ The verdict was for $5,200. It was not excessive. The plaintiff was severely bruised. She was unconscious for a short time. She was abed for a month following the accident and intermittently for some time thereafter. She was again abed from February to May, 1931. Her heart action was affected. One vertebra was crushed. She had some arthritis. She suffered pain. She sustained the loss of one eye. The damages awarded were within the fair discretion of the jury, and further discussion of the amount is unnecessary.

■ It is a contention of the defendants that the verdict was a quotient verdict and therefore invalid.

A quotient verdict, that is, one reached through an agreement that each juror put down the amount which he would award, and that the quotient resulting upon a division of the total by 12 shall be the verdict, is invalid. It is not supposed that jurors usually are at once in agreement upon the amount which is proper compensation for injury. They consider and discuss and finally come to a conclusion of what is fair and compensatory. They compare and may compromise their views. If in the process of reaching their award they set down the sums representing their individual views, add them, divide by 12, and upon further consideration and deliberation all agree upon the quotient as the fair amount of the award, nothing else appearing, the verdict is valid. St. Martin v. Desnoyer, 1 Minn. 131 (156), 61 Am. D. 494; Reick v. G. N. Ry. Co. 129 Minn. 14, 151 N. W. 408; Larson v. Wisconsin Ry. L. & P. Co. 138 Minn. 158, 164 N. W. 666; Note 52 A. L. R. 44; 20 R. C. L. p. 243, § 28; Am. Dig. Trial, § 315.

■ Affidavits or the testimony of jurors as to what transpired in the jury room are not admissible to impeach their verdict. This is the long settled doctrine of Minnesota. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7109, and cases cited; Am. Dig. New Trial, § 143. In 5 Wigmore, Ev. (2 ed.) §§ 2353, 2354, the history of the doctrine

is traced and a critical discussion is had of the cases and the basis of their decision. It is stated that there are but five or six jurisdictions holding to the contrary. The injustice of the application of the doctrine in a particular case is recognized; but the thought is that on the whole greater wrong would be done by the application of a different rule and that good policy sustains the one adopted. A typical statement is found in McDonald & U. S. F. & G. Co. v. Pless, 238 U. S. 264, 267, 35 S. Ct. 783, 784, 59 L. ed. 1300, where Mr. Justice Lamar, in referring to the rule against the reception of the affidavit of a juror to impeach the verdict in which he joined, said:

"The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room. * * * And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.'"

■ The rule stated in paragraph six relative to attacking a verdict upon the ground that it was reached by a quotient process applies. St. Martin v. Desnoyer, 1 Minn. 131 (156), 61 Am. D. 494; Keane v. Butner, 150 Minn. 90, 184 N. W. 571; McDonald v. Pless, 238 U. S. 264, 35 S. Ct. 783, 59 L. ed. 1300; Birmingham Ry. L. & P. Co. v. Moore, 148 Ala. 115, 42 So. 1024; Hull v. Larson, 14 Ariz. 492, 131 P. 668, Ann. Cas. 1915C, 1145; Wixon v. Bixby, 127 Mich.

479, 86 N. W. 1001; Philips v. Stewart, 69 Mo. 149; Dodge v. Carroll, 59 N. H. 237; Ulrick v. Dakota L. & T. Co. 2 S. D. 285, 294, 49 N. W. 1054; International & G. N. R. Co. v. Gordon, 72 Tex. 44, 111 S. W. 1033.

■ The next question relates to the polling of the jury. G. S. 1923 (2 Mason, 1927) § 9300, provides:

"* * * Before the verdict is recorded either party may require the jury to be polled, whereupon the clerk shall ask each juror if it be his verdict. If any answer in the negative, the jury shall be sent out for further deliberation. * * *"

A similar provision is found in G. S. 1923 (2 Mason, 1927) § 10720, relative to verdicts in criminal cases.

The object of polling is stated by Mr. Justice Brewer in Humphries v. District of Columbia, 174 U. S. 190, 194, 19 S. Ct. 637, 638, 43 L. ed. 944, in accordance with the accepted view, as follows:

"Its object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent. It is not a matter which is vital, is frequently not required by litigants; and while it is an undoubted right of either, it is not that which must be found in the proceedings in order to make a valid verdict."

And in State L. Ins. Co. v. Postal, 43 Ind. App. 144, 151, 84 N. E. 156, 1093, 1094, the rule is stated as follows:

"It has been a fundamental principle of the law from the time of the inauguration of the jury system to allow the jury all reasonable opportunity, before their verdict is recorded and they are discharged, to declare the truth according to their consciences. And the object of the poll is to give the juror an opportunity to declare in open court his judgment in praesenti."

The record shows this:

"After the jury returned the verdict as stated above, in the sum of $5,200 in favor of plaintiff Elizabeth Hoffman, counsel for the

respective parties being present in court, Mr. Flynn made the following motion:

"May the record show that both defendants join in the request that the jury be polled on the question of whether or not this verdict was a. quotient verdict. Under the law this is a quotient verdict and should not be allowed to stand. We make the offer, counsel for Mariani and counsel for city to prove that a quotient verdict was arrived at by this jury.

The Court: "May the record show that that motion on the part of defendants is denied. The jury was polled, and each answered that this was their true verdict.

"Exception by defendant city."

An illustrative case is Roy v. Goings, 112 Ill. 656. The jury on being polled were asked how they arrived at the amount of damages, and answered that it was reached by each juror fixing a sum and dividing the aggregate of the sums by 12. The court gave the jury this instruction, on its own motion [112 Ill. 667]:

"If your verdict be in favor of the plaintiff, you cannot, in determining the amount of damages for the plaintiff, add together the respective amounts named by each juror, and divide the sum by twelve, the number of jurors, but must determine and agree upon the amount of damages collectively, and as one body."

It then sent the jury out, and the jury returned a verdict of the same amount. The statement of law was correct enough. The only error was in permitting the jurors to be questioned as to how they reached their verdict and that it was by a quotient process. The court said [112 Ill. 668]:

"It was error to permit the jurors to testify or be questioned as to the mode in which they arrived at the amount of damages. No rule is better or more firmly established than a juror cannot testify to impeach a verdict he has participated in finding. But the error was that of appellant, and of it he can take no advantage. Such practice is not to be encouraged, as it violates well and firmly established rules, and must, if permitted, lead to abuse.

"We perceive no error in overruling the motion for a new trial. If there is error, we are unable to review it."

The court in the case at bar correctly ruled in refusing an inquiry on the polling of the jury into the question of whether the verdict had been reached by a quotient process. Doing so would be a clear evasion of the rule that jurors will not be permitted by affidavit or testimony to impeach their verdict.

Order affirmed.

